WILLIAM J. HUBBARD & others, Executors, *vs.* CORNELIUS COOLIDGE.

This writing, "I agree with A. to give up his note for the W. stock, and allow him in account the sum paid thereon, depending on his exertion to free me from that concern without further loss," constitutes a conditional promise ; and the acceptance thereof by A. is an undertaking by him to use his exertion, &c. on request. Such promise is on a sufficient consideration, if, when it was made, there was a possible liability of the promisor to further loss from the concern mentioned.

ASSUMPSIT on several promissory notes given by the defendant to John Hubbard, the plaintiffs' testator, and on several 'tems of account. The defendant filed an account in offset; and the principal controversy, at the trial before *Wilde*, J. (so far as it relates to the question now brought before the court,) was respecting a written promise of the testator, hereinafter set forth. (*p.* 89.) The evidence as to this promise was as follows. On the 22d of May, 1828, the said testator and the defendant made a written agreement, reciting that three houses in Chesnut Street, and one house in Cedar Street, and eighteen shares in the Boston and Canton Manufacturing Company were held by said testator as the joint property of himself and the defendant, and stating it as agreed, (*inter alia,*) that the accounts of Chesnut and Cedar Street purchase should be settled, made up to June 30th that the testator should take to his own account the three houses in Chesnut Street, at $9,000 each, value, June 30th ; that the defendant should take to his own account eighteen shares in the said manufacturing company, and thirty-four and a half shares in the Ware Manufacturing Company, at $500 each, and give his note therefor, payable at or within two years from October 1st, 1828, with interest after, and transfer said shares to said testator as collateral security for said note ; the defendant reserving to himself the right to sell or exchange said shares, giving the testator equal security.

In pursuance of this agreement, the testator transferred the said shares to the defendant, who gave his note of $26,250 therefor, dated May 23d, 1828, and transferred them, as security, to the testator.

Prior to April, 1829, the Canton Company began to be so far embarrassed as to threaten the stockholders with individual liability for their debts. The testator was absent at that time from the United States, and Samuel Hubbard, Esq. was his attorney. The testator returned in May, 1829. There was an attempt to raise money from the stockholders, by voluntary contribution, to pay the debts of said company, and the testator paid $15,000 for that purpose. But it was found to be impossible to raise a sufficient sum, in that way. An attempt was afterwards made to organize a new company, to be called the Canton Manufacturing Company, in which the defendant, (by virtue of the $15,000 which the testator had paid, and the further sum of $35,000, which he had agreed to pay, to be applied to the payment of the debts of the old company,) would be entitled to, and agreed to take, one hundred shares, which it was agreed he should take in his own name, and mortgage to the testator to secure the aforesaid note of $26,250. It was further agreed, that the defendant should give a new note for $32,000, part of the $50,000 advanced and to be advanced by said testator, who had discharged the defendant from $18,000, the balance of said $50,000 ; but the shares were to be so held as not to involve the testator in any liability for the debts of the company.

The plan, however, of a new company was not carried into effect ; and it was then proposed to sell the company property, and the defendant was employed for that purpose. To induce him to exert himself to effect a sale, Samuel Hubbard, Esq., in behalf of the testator, promised, in case a sale should be made by him, (acting wholly under said Samuel's directions in the negotiation,) to give up to him his note for $32,000 ; and also his notes, given from time to time, as that sum had been paid by the testator, for the $50,000, and to indorse on his note for $26,250 so much as related to the Canton shares, which was $9,000 ; and to release an attachment made by the testator on the defendant's property ; and to apportion the $50,000 paid on forty shares.

By means of the defendant's exertions, a sale was afterwards made, and the conditions aforesaid were complied with. The notes aforesaid were given up, and $9,000 indorsed on the note

of $26,250, by William D. Sohier, Esq., with whom it was deposited, by agreement of the parties, in order that the indorsement might be made when the condition should be fulfilled. The note remained in said Sohier's hands until September 29th, 1832, no suggestion having been made to him by the defendant that he (the defendant) was entitled to any indorsement or allowance thereon besides the said sum of $9,000.

In July, 1829, the defendant failed in business, and on the 15th of that month he transferred to the testator sundry equities of redemption, the agreed value of which, viz. $6,459, was indorsed on the note of $26,250.

The Ware Manufacturing Company became embarrassed in 1829, so as to alarm the stockholders concerning their individual liability for the debts ; and the testator requested the defendant to receive a transfer of the thirty-four and a half shares held as collateral security as aforesaid, which the defendant declined to do, unless the testator would give up the note which he held for said shares. The testator ultimately agreed to give up said note, and the defendant received a transfer of the shares. The note, however, was not given up ; for the reason, as assigned by the testator, that the accounts of the company were not closed, so as to relieve him from liability. On this point of the case, the clerk and treasurer of the Ware Company, a witness called by the defendant, testified that the largest debts, due from the company in 1829, were incurred prior to 1828, and that the others were renewals of previous debts also contracted prior to that year ; that about the 17th of May, 1830, John Hubbard (the testator) requested him to record a transfer of thirty-four and a half shares to the defendant, being all which said testator then held. The witness did not record it, because the defendant had not requested it to be done, and it was a regulation of the company that no transfer should be made without consent of the transfer committee. On the next day, the testator and defendant were in the office of the witness, and the testator requested the defendant to take the transfer ; and the defendant saying that the shares had been transferred to the testator as collateral security, and that he had promised to protect them, but that he would take the transfer if the testa

tor would give him up his note ; and that then he should lose his shares and all he had paid on the note.  The testator said he would give up the note when he should be free from all assessments.  A note of the company for $ 40,000 was then to fall due in a few days.  The transfer was made and left, with a written demand of the defendant on the witness to record it.

The same witness further testified that the debts of the Ware Company were all paid on the 12th of June, 1830, and the stockholders discharged from liability ; that the testator never paid any assessment after the spring of 1829 ; that the defendant's exertions for the company were considered equivalent to the claim of the testator ; that the defendant told the witness that the testator offered him a written obligation, and that he declined to receive it, considering his word as good as his bond.  On cross-examination, the witness testified, that since this suit was brought, the defendant told him that the day the paper hereafter mentioned was signed he went to Nahant, and the testator, on meeting him, thought he looked uneasy, and asked him what was the matter ; that the defendant replied to him that he felt badly, and was dissatisfied because the testator had not kept his word with him about the note, and had not given it up as he had agreed to do ; that he saw no encouragement for him to exert himself under such circumstances ; that the testator thereupon said he had never changed his original purpose, and was then ready to give the defendant an obligation to do it ; and that they both went into a house, and the paper was then and there executed, by which the testator agreed to give up to the defendant his note for the Ware stock, and allow him in account the sum paid thereon at the time of his failure, &c.

It was proved that the defendant, on the 11th of June, 1830, sent a letter to the testator, informing him that the Ware concerns were all closed.

The plaintiffs' counsel yielded all claim to the note for $ 26,250, but resisted the defendant's demand to be repaid on settlement the sum indorsed on the note under date of July 15, 1829, on the ground that there was no consideration for the promise, and also on the ground that the promise was given un-

der a mutual mistake, or procured by fraud ; the intent being to execute the previous verbal agreement only.

The defendant's counsel argued, that no consideration was necessary to support this claim, it being in the nature of a voluntary settlement of accounts. The judge ruled that a consideration was necessary to support the promise.

The plaintiffs' counsel argued that there was no consideration, because the words in the paper, " free me from that concern," related to the Ware Company, which had been settled, and the testator discharged from all liability, in the month of June preceding.

The defendant's counsel argued, that as the Ware Company's affairs were closed, the Canton Company was intended ; but the plaintiffs' counsel insisted that the terms of the contract plainly referred to the Ware Company concern, and that no evidence appeared that the testator knew that the Ware Company's debts were settled.

The judge instructed the jury that there was no evidence of misrepresentation or mistake, as, notwithstanding the previous verbal bargain, the parties might have agreed to vary it afterwards ; and that as to a want of consideration, the paper appeared on the face of it to refer to the Ware Company ; but as the defendant had sent a letter to the testator, informing him that the Ware concern was closed, it might be inferred that the Canton Company was intended, unless, as suggested by the plaintiffs' counsel, the jury believed that the testator had forgotten that fact.

The judge left it to the jury to say whether there was any consideration or misrepresentation, and instructed them that if there was a consideration, a mere mistake on the part of the testator would not avoid the contract, unless it appeared that he had been misled by some misrepresentation of the defendant.

The jury returned a verdict for the plaintiffs, for $6,742·65, having rejected so much of the testator's promise, made in August, 1830, as without consideration.

The defendant moved for a new trial, on the ground that the verdict was against the evidence, and because the judge ruled that a consideration was necessary to support the promise to allow in account the sum paid on the $26,250 note.

*Dexter*, for the defendant.

*Choate* and *W. J. Hubbard*, for the plaintiffs.

PUTNAM, J. It is admitted that the jury have not allowed to the defendant the amount of money which he paid on the note for $26,250, on the 15th of July, 1829, according to the agreement made at Nahant in 1830 ; and the reason given for the disallowance is the want of consideration for so much of the agreement. The plaintiffs deny that the sum of $6,459, which was paid by the defendant and indorsed on the note, was ever intended to be credited. But they allow the agreement, so far as it concerns the giving up of the note itself. The agreement is in the words following, "Nahant, August, 1830. I agree with Cornelius Coolidge to give up his note for the Ware stock, and allow him in account the sum paid thereon, at the time of his failure ; [intending to put him in the same situation in respect to the Ware stock, that Mr. S. Hubbard has placed him in relation to the Canton stock] depending on his exertion to free me from that concern without further loss, and that nothing is to be said to Mr. Sturgis, or any one, till the settlement of accounts. John Hubbard."

It has been deemed important to determine whether the future services of the defendant were to be rendered, upon the notice and request of Mr. Hubbard, to the Ware concern or the Canton concern. On the part of the plaintiffs, it is contended that they related to the Ware concern, which had been fully settled ; and so that no services of the defendant would ever be wanted or required, and therefore that there was no consideration to Mr. Hubbard for the engagement to repay the money which the defendant had paid upon the Ware stock note. And we are inclined to the opinion, that the intent of the parties was, that the defendant's exertions were to be rendered in relation to the *Ware*, and not in relation to the *Canton* concern.

The subject of the agreement was the note which the defendant had given for the *Ware* stock, which note the testator then held. The sum paid on account of that note was agreed to be repaid ; and the situation in which the defendant was to be placed and left, in relation to the *Ware* concern, was explained by reference to a similar arrangement relating to the Canton

8 *

concern, where the defendant was allowed the whole that he had paid upon it. The Canton concern is thus incidentally introduced, and if the words which I have placed between brackets be read as a parenthesis, it would be perfectly clear that the agreement related to the Ware concern.

The testator was to give up the defendant's note for the Ware stock, and allow him in account the sum paid thereon at the time of his failure, depending on his exertion to free Mr. H. from that concern without any loss, — reading the paper without the parenthesis. If that should be read afterwards, "intending to put the defendant in the same situation in respect to the Ware stock, that Mr. S. Hubbard placed him in relation to the *Canton* stock," it would, by way of reference, clearly indicate the terms of the agreement. Mr. S. Hubbard had allowed the defendant all that he had paid on the *Canton* stock, for the services which he had rendered to the testator relating to that stock. We proceed upon the ground that the services, which the testator depended upon, were to be performed in relation to the *Ware* stock or concern.

But it is argued for the plaintiffs, that the verbal agreement did not embrace the money which the defendant had paid upon the note for the Ware stock, but merely the note itself, which was agreed to be allowed, on account, when the Ware concern was settled ; and that the plaintiffs are willing to give the defendant credit for *that* amount. It is true that the defendant considered that the Ware concerns were settled, and that he was entitled to have his note ; but from some cause or other the verbal agreement was not carried into effect. The parties afterwards met at Nahant, and entered into the written agreement which is now under consideration. And it has been argued for the plaintiffs, that the writing was intended to include only what before had been verbally agreed ; and that there was mistake or misrepresentation, or no consideration for the part of the written contract which exceeds what had been some time before agreed upon. It is not denied that there was a good consideration for that part of the agreement, by which the testator was to allow to the defendant, on account, the amount then due on the note; indeed there

could be no foundation for such denial. The situation of the parties is to be taken into consideration. The testator had capital ; the defendant had skill. The testator became a stockholder in the Canton and also in the Ware concern, and was apprehensive that his property would be lost or greatly impaired from his iability, as a stockholder, for the debts due from these several companies.

In this extremity, the services of the defendant were put in requisition. And so far as they related to the Canton concern, it is conceded that they were eminently adapted to the occasion. They were performed under instructions of Mr. S. Hubbard, (which were read at the argument,) and the testator was relieved from the Canton concern. And he was desirous that the defendant should do the same thing in relation to the Ware liability.

The testator would have transferred his stock to the defendant, without his consent. But to that the defendant objected, as soon as the testator's intent became known. The defendant would not assume the liability without some substantial reward. He undertook the risk and liabilities, at the earnest request of the testator, in consideration of having the amount due upon the note for his Ware stock allowed him on account. This makes the first part of the written agreement. It was not upon a *past consideration*, (which, technically considered, is for services performed without request, or a mere voluntary courtesy,) but upon services rendered upon request. And so far the plaintiffs admit that the agreement should be carried into effect.

But the last part of the agreement, that is, to allow the defendant the sum he had paid, and which was indorsed on the note, is controverted.

We are then to consider whether, from the paper itself, and the evidence, any consideration appears for it. The affairs of the Ware Company were represented by the defendant to have been settled at the time when he claimed of the testator the performance of his verbal agreement. But for some reason or other he did not comply with the request.

The parties afterwards met, and in a conversation the defend-

ant complained that there was no inducement for him to exert himself in the testator's service, as that verbal promise had not been performed ; and thereupon the testator professed a willingness to give his written undertaking. The parties then went into a house, and the result was, that the agreement now under consideration was made.

It must be recollected that the testator, at the time when the defendant called on him to give up the note, expressed an apprehension that notwithstanding he had transferred the stock, he might still be liable for assessments. The verbal agreement related to the services which the defendant had performed at the testator's request. And the defendant considered that the testator was relieved, and claimed the note. But the testator was apprehensive still. How could it be ascertained with certainty, that he was free from all future liability ? Was it certain that no other creditors of the company would appear, and that no further claims, at least, would be made upon him, growing out of that disastrous affair ? His desire was to secure the future services of the defendant, if there should be any necessity for them, and he expressed this reliance upon the defendant in the paper itself. It was accepted by the defendant upon the terms or condition expressed.

Was this giving something for nothing on the part of the testator ? We think not. We cannot estimate, as the parties could, the benefit to one or the inconvenience to the other. The law does not nicely weigh the amount of benefit to one party, or injury or loss to the other, which will make a legal consideration.

Besides, it is to be recollected that the testator was known to be a man of great sagacity as well as of property. His connexion with the defendant, in matters of business or speculation, had been somewhat extensive. They dealt in large sums, and the amount which was to be allowed to the defendant was not a present payment of cash, but an item to be put to the credit of his account, which still remained open. Again, in regard to the benefit to the testator. He knew full well the eminent services which it would be in the defendant's power to render him, if

there should be future claims upon him. It would have been extraordinary if he should not have desired to secure those services. The promise was, not to pay something for nothing, but something for services thereafter to be rendered, upon request, if the promisor should want them.

It is said, that the defendant has not rendered any services for the testator, since the agreement. If it be so, it does not appear that there has been any necessity for them, nor that any request has ever been made of him, or any denial by him to render any service. It was sufficient for him to wait until his services should be called for.

It is not material by which of the parties to an agreement the words are spoken, if the assent of the other appears. The intent is to govern. Thus if a man makes a feoffment in fee to one, *ad erudiendum* his son in such an art, that is a condition ; and yet it is not spoken by the feoffor any more than by the feoffee ; but the words purport the intent of the parties. Plowd. 142. So a grant of an annuity to one, *pro consilio impendendo*, is a grant conditional, and although there is not any word of condition in the case, yet it is all one as if the grant of the annuity had been upon a condition that he should give him counsel. Plowd. 141. And in such case if he will not give the counsel, the other may detain the annuity. See also *Dutton* v. *Poole*, 1 Vent. 318. Cowp. 443. 3 Bos. & Pul. 149, *note*. *Shepherd* v. *McEvers*, 4 Johns. Ch. 136.

It is not essential that the consideration should be adequate in point of actual value. It is sufficient, if a slight benefit be conferred by the plaintiff on the defendant, or on a third person, or if the plaintiff sustain the least injury, inconvenience, or detriment, or subject himself to any obligation without benefiting the defendant or any other person. Chit. Con. 7. It is not necessary that the mutual promise be directly proved, provided it be fairly presumed. 2 Evans's Poth. 22. (Philad. ed.). E. g. a promise of marriage, from the general tenor of conduct.

Now the agreement under consideration is very clear in its terms. The promise to pay, depending upon the defendant's exertion to free the testator from further loss, was in its nature conditional ; and the acceptance of the writing by the defendant

was an undertaking to comply with the terms therein expressed. If the testator had complied on his part, and taken up the contract, he would have had sufficient evidence, in the handwriting of the defendant himself, of his undertaking. The motive that influenced the testator plainly appears. The defendant had succeeded in relieving him from his connexion with the Canton concern, and he had allowed the defendant all that he had paid on that concern. He had effected the same desirable object also in relation to the Ware concern, so far as he knew or believed ; the testator, however, did not feel entirely safe from future liabilities. Well founded or not, such appeared to be his doubt or suspicion. ˙ He therefore thought it best to secure the future services of the defendant, and agreed to place him upon the same ground in relation to the Ware concern, as he had been placed in regard to the Canton concern ; and that arrangement could be effected only by.crediting him with all the money he had paid on the note for the Ware stock, as well as with the note itself. We must presume, therefore, that the testator caused one of the motives which led to the settlement to be inserted in the writing, namely, that he depended upon the defendant's exertion to free him from the Ware concern without further loss. And the defendant accepted the agreement accordingly. Upon this consideration the agreement was executed and delivered. It is no answer to say, that the defendant's services might never be called for. He was *retained*, to say the least ; and whether, if his services should be called for and rendered, they would prove more or less valuable to the promisor, or more or less inconvenient to himself, it is not material for us to determine. It was said, however, that this written agreement was made upon a *mistake*, or *misrepresentation ;* but there is no evidence to prove it. It was made after the verbal agreement, embracing that and more ; and it was made by individuals in every respect perfectly competent to weigh and understand the motives and reasons which led them to make it. And we think the jury, from the evidence in the case applicable to the agreement itself, were not warranted in rejecting the same as without consideration. A new trial is to be had, and the jury is to be instructed conformably to this opinion of the whole court.